UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THERESA A. TORRES,                                 Civil Action No. 10-14450

      Plaintiff,                                               HON. PATRICK J. DUGGAN
                                                U.S. District Judge
v.                                                                    HON. R. STEVEN WHALEN
                                                U.S. Magistrate Judge
COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Theresa A. Torres brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion for summary judgment [Doc. #12] be GRANTED and Plaintiff's motion [Doc. #10] DENIED.

**PROCEDURAL HISTORY**

On May 25, 2007, Plaintiff filed an application for DIB and SSI, alleging disability as of December 21, 2006 (Tr. 124-131, 147-149). After the initial denial of the claim, she

filed a request for an administrative hearing, held on February 17, 2010 in Orland Park, Illinois before Administrative Law Judge ("ALJ") Denise McDuffie Martin (Tr. 28). Plaintiff, testifying by videoconference from Flint, Michigan, was represented by attorney John Morosi, (Tr. 31-49). Her sister, Elena Vashon also testified, as did Vocational Expert ("VE") Timothy Shaner (Tr. 49-54, 54-57). On May 18, 2010, ALJ Martin found that Plaintiff was not disabled (Tr. 22). On September 19, 2010, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the Commissioner's decision on November 8, 2010.

## BACKGROUND FACTS

Plaintiff, born September 5, 1968, was 41 when the ALJ issued her decision (Tr. 22, 124). She completed high school and three years of college (Tr. 169). She worked previously as a cook/restaurant manager and shirt presser (Tr. 165). She alleges disability as a result of anxiety, depression, and back and knee injuries (Tr. 164).

### A. Plaintiff's Testimony

Plaintiff, responding to questions by her attorney, began her testimony by confirming that she had been receiving counseling and psychiatric care for "quite some time" (Tr. 31). She stated that she was currently taking Xanax and Seroquel XR as well as a medication prescribed for bipolar disorder (Tr. 32). Plaintiff alleged concentrational problems, stating that she lost focus while reading a newspaper or helping her son with his homework (Tr. 33). She alleged that since losing her job as a cook, she experienced anxiety being around other people, reporting symptoms of hyperventilation, a feeling of being overwhelmed, and nausea

(Tr. 33). She stated that her psychological symptoms began after sustaining physical injuries in a car accident, acknowledging however that she continued to work for several years after the accident (Tr. 34). She noted that her work post-dating the accident (the jobs of cook and shirt presser) allowed her to work in situations with only "one or two people" (Tr. 34). She alleged that at present, her concentrational problems prevented her from returning to her job as a cook (Tr. 34). Plaintiff testified that she was also very forgetful, noting that her sister helped her remember her appointments (Tr. 35). She alleged that she was unable to concentrate for more than 15 minutes at a time (Tr. 36).

Plaintiff reported that she was admitted to the hospital on two occasions for suspected heart attacks, alleging that she was actually experiencing anxiety attacks (Tr. 35). She opined that the responsibilities of raising an 11-year-old son, along with financial constraints, contributed to her anxiety (Tr. 36). She alleged depression as a result of physical problems and her inability to be a good mother to her son (Tr. 36). She also reported that nighttime sleep disturbances required her to sleep during the day (Tr. 37). She also alleged occasional urinary incontinence brought on by coughing spells (Tr. 40).

Plaintiff stated that she stood 5' 4" and weighed 332 pounds (Tr. 38). She alleged that weight problems exacerbated her back problems, creating left leg numbness and limiting her treatment options (Tr. 38). She stated that epidural injections to the spine had given her only short-term relief (Tr. 39). She estimated that she could stand or sit for up to 20 minutes before requiring a position change (Tr. 40).

Plaintiff testified that she relied on her family for financial and emotional support (Tr.

41). In response to questioning by the ALJ, Plaintiff reported that she and her son currently lived with a relative (Tr. 42). In regard to her most recent job as a cook/manager, Plaintiff indicated that the restaurant's closing coincided with her need to work shorter hours as a result of back pain (Tr. 42-43). She testified that had the restaurant stayed open, she would have continued to work to support her son (Tr. 43). She opined that at present, she was unable to perform any work due to anxiety and depression (Tr. 43). She stated that before working at the restaurant, she worked as a shirt presser at a tuxedo rental establishment and as a stocker at Walmart (Tr. 44). She indicated that her past relevant work also included a job as a machine operator (Tr. 45). She denied current tobacco, alcohol, or illicit drug use (Tr. 46).

Plaintiff testified that she spent most of her waking hours watching television and performing light household chores (Tr. 46). She stated that her parents helped her with laundry chores (Tr. 47). She reported driving only once every one to two weeks (Tr. 47). She stated that she went to her sister's house occasionally to watch movies and sporting events and also visited her parents regularly (Tr. 47-48). Plaintiff testified that she was "sometimes" able to follow the storyline of a movie (Tr. 48). She denied performing yard work (Tr. 49).

### B. The Testimony of Plaintiff's Sister

Plaintiff's sister, Elena Vashon, stated that her sister experienced claustrophobia-type symptoms in large groups of people (Tr. 50). She opined that Plaintiff's psychological symptoms would preclude jobs requiring her to "deal with people" (Tr. 51). She opined

further that Plaintiff's inability to stay on her feet for extended periods would preclude all work (Tr. 51). Ms. Vashon stated that in the event her sister was awarded benefits, she would be unable to handle her own funds due to concentrational problems (Tr. 51). Ms. Vashon testified that Plaintiff was amenable to having another family member oversee her finances (Tr. 52). She opined that a steady source of income would allow her sister to stabilize her psychological condition (Tr. 54).

### C. Medical Evidence[1]

#### 1. Treating Sources

March, 2007 treating notes state that Plaintiff experienced depression and anxiety (Tr. 321). In May, 2007, an EMG found "mild, chronic left L5 radiculopathy without ongoing denervation" (Tr. 275). Plaintiff was found to be fully oriented with a normal mood and affect (Tr. 264). In June, 2007, Plaintiff sought emergency treatment for back pain (Tr. 295). She was given Toradol before being released (Tr. 295). A bone scan of the lumbar spine was normal (Tr. 285). The same month, Plaintiff was referred to neurosurgeon Ravindra N. Goyal, M.D. (Tr. 396-397). Dr. Goyal observed that her mood, affect, attention span, and language use was normal (Tr. 396). In August, 2007, Sam Morkos, M.D. remarked that Plaintiff had not experienced improvement after a recent epidural injection (Tr. 301). He noted that an MRI of the lumbar spine was unremarkable (Tr. 301). In September, 2007,

---

[1] Plaintiff's arguments for remand pertain exclusively to her psychological condition. As such, the physical treating records, while fully reviewed by the undersigned, are discussed briefly for background purposes only.

Plaintiff was advised to continue using a CPAP device for sleep apnea (Tr. 302).

Plaintiff sought treatment for depression and anxiety in the autumn of 2007 (Tr. 406-411). In September, 2007, she received a GAF of $55^2$ (Tr. 441). Plaintiff opined that her depression was a "serious" problem and anxiety was a "severe" problem (Tr. 436). She acknowledged that she had been arrested for shoplifting and was currently on probation (Tr. 439). Barry R. Binkley, M.D. noted that Plaintiff was well-groomed with normal but pressured speech (Tr. 409). Her judgment and insight were intact and her mood was deemed normal (Tr. 409). Dr. Binkley assigned her a GAF of $50^3$ (Tr. 409). In November, 2007, psychological treating notes state that Plaintiff's progress was "inconsistent" (Tr. 444). In February, 2008, psychological notes state that Plaintiff was depressed but had an appropriate affect (Tr. 447). In May, 2008, Plaintiff reported that she was thinking of taking a vacation to "decompress" (Tr. 450). In August, 2008, her progress was again deemed "inconsistent" (Tr. 451).

In October, 2008, Plaintiff sought emergency treatment for left side chest pain (Tr. 454). Blood tests showed an elevated white blood cell count but imaging studies were

---

[2] A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ), 30 (4th ed.2000).

[3] A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR* ) (4th ed.2000).

unremarkable (Tr. 455, 478). She was released in stable condition (Tr. 455).

In December, 2008, Dr. Binkley completed a Mental Impairment Questionnaire on behalf of Plaintiff's application for benefits, finding that Plaintiff exhibited social withdrawal, mood disturbances, depression, and irritability (Tr. 480). He found that Plaintiff experienced moderate restrictions in daily living, social functioning, and concentration, persistence, and pace (Tr. 483). He found further that Plaintiff had experienced three episodes of decompensation in the past year (Tr. 483). He also found moderate limitations in the ability to remember work-like procedures, carry out detailed instructions, maintain concentration for extended periods, work in coordination with others, complete a workweek without psychologically based interruptions, and respond appropriately to workplace changes (Tr. 484-485).

In February, 2009, Plaintiff sought emergency treatment for chest and left arm pain (Tr. 606). An EKG was normal (Tr. 608). A heart catheterization was unremarkable (Tr. 610-611). In March, 2009, Dr. Binkley found that Plaintiff was "doing fine" on her current medication (Tr. 496). In April, 2009, Plaintiff's therapist noted that she had made "fair" progress and exhibited an appropriate effect (Tr. 489). Later the same month, Dr. Binkley observed that Plaintiff was "stressed" as a result of an abnormal pap smear, remarking nonetheless that she was "one of the most high functioning, logical, intelligent people I know. People come to her to settle problems and get advice" (Tr. 494).

In June, 2009, Plaintiff sought emergency treatment for chest pain and left arm numbness (Tr. 501). An EKG and troponin levels were normal (Tr. 502).

In February, 2010, Dr. Binkley completed a Mental Impairment Questionnaire, stating that Plaintiff continued to experience panic attacks, decreased energy, and a depressed mood (Tr. 712). Consistent with his December, 2008 assessment, Dr. Binkley found that Plaintiff experienced moderate restrictions in daily living, social functioning, and concentration, persistence, and pace[4] (Tr. 714). He again found that Plaintiff had experienced three episodes of decompensation in the past year (Tr. 715). He also found moderate limitations in the ability to remember work-like procedures, carry out detailed instructions, maintain concentration for extended periods, work in coordination with others, and respond appropriately to workplace changes as well as a *markedly* limited ability to complete a workweek without psychologically based interruptions (Tr. 715-716).

### 2. Consultive and Non-Examining Sources

In August, 2007, Mark Zaroff, Ph.D. performed a consultive psychological evaluation of Plaintiff on behalf of the SSA (Tr. 362-366). Plaintiff reported that back and knee pain created anxiety, shortness of breath, and shaking (Tr. 362). She denied either psychiatric hospitalizations or outpatient psychotherapy, but admitted that she had been arrested for retail fraud and failing to report her whereabouts while she was on welfare (Tr. 362-363). Plaintiff "made good eye contact and answered questions well," stating that she now spent her time playing board, card, and video games with her son (Tr. 363). She reported good support

---

[4]Dr. Binkley's February, 2010 assessment is identical to the December, 2008 assessment except that the latter evaluation found marked, rather than moderate limitations in the ability to complete a workweek without psychologically based interruptions (Tr. 485, 716).

from her family and friends (Tr. 363). Dr. Zaroff noted a "somewhat manic" affect and poor motivation, but that she was oriented to person, place, and time (Tr. 364). He assigned her a GAF of 52, noting a diagnosis of bipolar disorder and anxiety (Tr. 366).

The following month, a Psychiatric Review Technique by Wayne Hill, Ph.D. found the presence of bipolar and anxiety-related disorders (Tr. 373, 376, 378). He found that Plaintiff experienced mild restrictions in activities of daily living and social functioning, and moderate deficiencies in concentration, persistence, and pace (Tr. 383). Dr. Hill concluded that Plaintiff's claims were only partially credible (Tr. 385).

A Mental Residual Functional Capacity Assessment, also performed on behalf of the SSA by Dr. Hill, found that Plaintiff experienced moderate limitations in the ability to maintain attention and concentration for extended periods, work in coordination with others, interact appropriately with the general public, travel in unfamiliar places, or set independent goals (Tr. 370). Dr. Hill concluded as follows:

> [C]laimant's psychological limitations do not appear to interfere with the potential for task activities that are simple in nature. Claimant retains the mental residual capacity to perform step one and step two tasks on a sustained basis.

(Tr. 371).

In November, 2007, a Physical Residual Functional Capacity Assessment performed on behalf of the SSA found that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit for six hours in an eight-hour workday, stand and walk for two hours; and push and pull without limitation (Tr. 421). Plaintiff was limited to frequent (as opposed to *constant*)

balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; and occasional climbing of ladders, ropes, and scaffolds (Tr. 422). The Assessment found the absence of manipulative, visual, or communicative limitations but concluded that Plaintiff should avoid concentrated exposure to vibration (Tr. 424).

In October, 2009, Dr. Chukwuemeka Efobi completed a non-examining work-related activities assessment, stating that Plaintiff's to ability understand, remember, or carry out instructions, or interact with coworkers or supervisors was unimpaired by psychological issues (Tr. 554-555). He opined that her condition "might" affect her ability to complete a 40-hour workweek, finding that she experienced only mild limitations in social functioning and concentrational abilities (Tr. 555). He opined further that Plaintiff could perform secretarial work, baby sitting, home care, nurses aide work, and retail sales (Tr. 562).

### D.     Vocational Expert Testimony

VE Shaner classified Plaintiff's past work as a cook/restaurant manager as skilled and exertionally light; stock clerk, semiskilled/medium; presser (as performed) unskilled/light; and machine operator, semiskilled/light to medium[5]  (Tr. 55). The ALJ then posed the following hypothetical question, taking into account Plaintiff's age, education and work

---

[5]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

experience:

> [A]ssume an individual . . . who would be limited to lifting and carrying 10 pounds frequently, 20 pounds occasionally, sitting 6 hours in an 8 hour day, standing and walking 2 hours in an 8 hour day, no climbing of ladders, ropes or scaffolds, occasional climbing of ramps and stairs with occasional balancing, stooping, kneeling, crouching and crawling. She should avoid concentrated exposure to vibration, and it should be an unskilled, simple, routine repetitive job. Just minimal, brief interaction with supervisors, coworkers and the public. Would that hypothetical person be capable of doing any of the claimant's past work?

(Tr. 55). The VE replied that given the above limitations, the individual would be unable to perform any of Plaintiff's past work but could perform the unskilled, exertionally light work of an off-line bench assembler (4,500 positions in the regional economy); and inspector (1,600) as well as the unskilled sedentary work of a surveillance system monitor (400); and packager (2,100) (Tr. 55-56). He found further that if the same individual were limited to "one and two step task[s]," his job findings would be unaffected, noting that most of the cited positions "ha[d] math and language levels of one[] which would be the lowest indicated by the [Dictionary of Occupational Titles]" (Tr. 56). The VE stated that his testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 56).

In response to an alternative hypothetical question posed by Plaintiff's attorney, the VE stated that the inability to work for more than 15 minutes without taking a break or the need to miss more than three days of work each month would preclude all gainful employment (Tr. 56-57).

### E. The ALJ's Decision

Citing Plaintiff's medical records, the ALJ found that Plaintiff experienced the "severe" impairments of "bipolar disorder, post-traumatic stress syndrome, morbid obesity, adjustment disorder, lumbar radiculopathy, and left knee sprain" but that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13-14). She concluded that Plaintiff experienced mild deficiencies in activities of daily living and moderate deficiencies in social functioning and concentration, persistence, and pace (Tr. 15).

The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following limitations:

> [C]laimant must avoid concentrated exposure to vibration and must never climb ladders, ropes, and scaffolds. In addition, the claimant is limited to only occasional crawling, crouching, kneeling, stooping, balancing, and climbing of ramps and stairs. Because of her mental impairments, the claimant is limited to unskilled simple, routine, repetitive, 1-2 step tasks with only intermittent interaction with supervisors, coworkers, and the general public

(Tr. 16). The ALJ noted that in composing the RFC, he gave "benefit to [Plaintiff's] subjective complaints of limitations in concentration and social functioning" (Tr. 20). Citing the VE's job numbers, the ALJ determined that Plaintiff could perform the work of a bench assembler, inspector, surveillance system monitor and packager (Tr. 21 *see also* Tr. 21, fn 1).

The ALJ found Plaintiff's allegations of disability only partially credible, noting that Plaintiff had been non-compliant with both physical and psychological therapy (Tr. 19). The ALJ also discounted Dr. Binley's finding of "marked limitations" in concentration, citing the

treating physician's own notes stating that Plaintiff was "high-functioning, logical and intelligent" (Tr. 18).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. The Hypothetical Question

Plaintiff argues first that the hypothetical limitations of "'unskilled simple, routine, repetitive, 1-2 step tasks with only intermittent interaction with supervisors, coworkers, and the general public'"do not account for her moderate deficiencies in "concentration, persistence, and pace" as found in the ALJ's opinion. *Plaintiff's Brief* at 3-5 (citing Tr. 15, 55). Citing *Varley v. Secretary of HHS,* 820 F. 2d 777, 779 (6th Cir. 1987), she contends that the omission of key impairments invalidates the VE's job findings. *Id.* (citing Tr. 55-56).

The failure to account for moderate concentrational deficiencies in the hypothetical

question constitutes reversible error. While the ALJ need not use talismatic language or include the phrase "moderate deficiencies in concentration, persistence, and pace" in the hypothetical to avoid remand, *see Smith v. Halter,* 307 F.3d 377, 379 (6th Cir.2001), "unskilled work," or "simple work" are generally insufficient to account for moderate concentrational impairments. *Bankston v. Commissioner,* 127 F.Supp.2d 820, 826 (E.D.Mich.2000) (Zatkoff, J.); *Benton v. Commissioner of Social Sec.* 511 F.Supp.2d 842, 849 (E.D.Mich.,2007) (Roberts, J.); *Edwards v. Barnhart,* 383 F.Supp.2d 920, 931 (E.D.Mich.2005) (Friedman, J.); *Newton v. Chater,* 92 F.3d 688, 695 (8th Cir.1996); *McGuire v. Apfel,* 1999 WL 426035, 15 (D.Or.1999); *Roe v. Chater,* 92 F.3d 672, 676–77 (8th Cir.1996). The "simple work" limitation, by itself, is insufficient to address moderate concentrational problems, *i.e.,* staying on task for an entire work shift, the timely completion of tasks, maintaining focus, or other workplace limitations associated with moderate deficiencies in concentration, persistence, and pace.

Nonetheless here, the hypothetical limitations posed by the ALJ adequately addressed Plaintiff's moderate concentrational deficiencies. First, while neither "simple work," nor "routine, repetitive," considered piecemeal, would account for moderate concentrational deficiencies, these limitations, accompanied by the additional limitations of "1-2 step tasks" and "only intermittent interaction with supervisors, coworkers, and the general public" may be read cumulatively to encompass moderate impairments. Second, even assuming that these limitations were objectively insufficient to account for moderate deficiencies, Plaintiff does not state how moderate concentrational difficulties would preclude the work of an off-line

bench assembler, inspector, surveillance system monitor, or packager. Indeed, in response to questioning by Plaintiff's attorney, the VE, citing the DOT, testified that most of his job findings were categorized at "level one" math and language skills [6] (Tr. 56). To the extent that the limitations in cognitive functioning would not address moderate *pacing* deficiencies, I note that two of the four jobs cited by the VE (inspector and monitor) would not require production quotas.[7]

Third, the ALJ's choice of hypothetical limitations is easily supported by the record. The ALJ's finding of moderate concentrational difficulties was drawn from Dr. Hill's September, 2007 Assessment. Notably, Dr. Hill concluded that despite moderate deficiencies, Plaintiff's "psychological limitations do not appear to interfere with the potential for task activities that are simple in nature," and that she retained "the mental

---

[6] Under the DOT, "Level One math is defined as the ability to do the following: "Add and subtract two-digit numbers. Multiply and divide 10's and 100's by 2, 3, 4, 5. Perform the four basic arithmetic operations with coins as part of a dollar. Perform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound" (Tr. 71). *Humphrey v. Astrue,* 2011 WL 4345801, *2, fn 2 (E.D.Ky.,2011)(*citing* DOT § 311.677–010, 1991 WL 672694). "Level one of the language component, the lowest level used in DOT, requires the claimant to recognize the meaning of 2,500 (two- or three-syllable) words, read at a rate of 95–120 words per minute and compare similarities and differences between words and between series of numbers." *Dantzer v. Commissioner of Social Sec.* 2011 WL 1113458, *14 (N.D.Ohio 2011);1991 WL 688702.

[7] Standing alone, the 1,600 inspector positions existing in the regional economy constitute a "substantial" number. *Born v. Sec'y of H.H.S.,* 923 F.2d 1168, 1174 (6th Cir.1990) (citing *Hall v. Bowen,* 837 F.2d 272, 275 (6th Cir.1988)).

residual capacity to perform *step one and step two tasks on a sustained basis*" (Tr. 371)(emphasis added). The ALJ's findings are wholly consistent with Dr. Hill's findings and conclusion. *See Sutherlin v. Commissioner of Social Sec.,* 2011 WL 500212, *3 (E.D.Mich. 2011)(hypothetical limitations of "simple" and "one to two" step tasks drawn directly from conclusion of same examiner finding moderate concentrational deficiencies adequately accounted for moderate limitations). The ALJ also noted that the record supported a finding that Plaintiff experienced less than moderate concentrational problems, citing Dr. Binkley's statement that Plaintiff was "high-functioning" (Tr. 18, 494) and Dr. Efobi's finding of only "mild" concentrational deficiencies (Tr. 19, 555).

### B. Substantial Evidence

Plaintiff also argues that the ALJ's findings were not supported by substantial evidence. *Plaintiff's Brief* at 5-8. Specifically, she contends that the ALJ erroneously gave "considerable weight" to "internally inconsistent" consultive findings. *Id.* at 5. She points to discrepancies in Dr. Hill's Psychiatric Review Technique and Residual Functional Capacity Assessment findings, noting that he found mild limitations in social functioning in the former and *moderate* limitations in the latter. *Id.* at 6 (citing Tr. 370-371, 383).

This argument is without merit. Psychiatric Review Technique ("PRT") requires only a broad assessment of the claimant's overall level of limitation in the domains of activities of daily living, social functioning, and concentration (Tr. 383) whereas in the Residual Functional Capacity Assessment, limitations in social interaction are broken into five subcategories (Tr. 370). Of the five categories, Dr. Hill found two mild limitations, two

-17-

inapplicable to Plaintiff, and a moderate deficiency in interacting appropriately with the general public (Tr. 370). Thus, his finding on the following page that Plaintiff experienced a moderate limitation in social interaction pertaining to her work abilities was not inconsistent with his PRT finding of generally mild limitations in social functioning (Tr. 383).

Plaintiff's argument that Dr. Efobi's findings were also internally inconsistent is likewise unavailing. Dr. Efobi's generalized findings that Plaintiff experienced mild social and concentrational limitations (Tr. 559) does not contradict his finding that Plaintiff did not experience any *work-related* limitations in these areas (Tr. 554). Although Drs. Hill and Efobi differ as to whether Plaintiff experienced any psychological work-related impairments, neither opinion is internally inconsistent.

Finally, I disagree with Plaintiff's contention that the ALJ unfairly pounced on inconsistencies in Dr. Binkley's "disability" opinions. To the contrary, the ALJ reasonably found that Dr. Binkley's opinion of disabling limitations, *i.e.,* psychologically-based disruptions within the course of a workweek (Tr. 484-485) and multiple episodes of decompensation (Tr. 483, 715) were contradicted by his own treating notes (Tr. 18). In particular, the ALJ noted that Binkley's finding of disability level limitations stood at odds with his own treating notes stating that Plaintiff was "one of the most high-functioning, logical and intelligent persons" that he knew (Tr. 18 citing 494). Further, the medical transcript contains absolutely no support for his finding that Plaintiff experienced *any* episodes of decompensation, much less Dr. Binkley's claim that Plaintiff suffered from three

-18-

of such episodes in the course of one year (Tr. 483, 715).

In closing, I note that my recommendation to uphold the Commissioner's decision should not be read to trivialize Plaintiff's legitimate limitations or personal problems. However, based on a review of this record as a whole, the ALJ's decision is within the "zone of choice" accorded to the fact-finder at the administrative hearing level, *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's motion for summary judgment [Doc. #12] be GRANTED and Plaintiff's motion [Doc. #10] DENIED. Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 14 pages in length

unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                              s/ R. Steven Whalen
                                              R. STEVEN WHALEN
                                              UNITED STATES MAGISTRATE JUDGE

Date: January 25, 2012

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on January 25, 2012.

                                              s/Johnetta M. Curry-Williams
                                              Case Manager